IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

SOUTHERN FIELD MAINTENANCE )
& FABRICATION LLC, )
)
    Plaintiff, )
)
v. )     CASE NO.: 2:18-cv-581-GMB
)     [wo]
WALTER ERIC KILLOUGH and )
TOTAL MAINTENANCE SERVICES, )
)
    Defendants. )

## <u>MEMORANDUM OPINION AND ORDER</u>

Now before the court is a motion to dismiss filed by Defendants Walter Eric Killough and Total Maintenance Services. Doc. 13. Plaintiff Southern Field Maintenance & Fabrication, LLC ("Southern Field") filed this lawsuit on June 15, 2018, alleging several state and federal claims arising out of actions by its former employee, Walter Eric Killough, and his new business, Total Maintenance Services ("TMS"). Doc. 1. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. Docs. 19 & 20. After careful consideration of the parties' submissions and the applicable law, for reasons to be discussed below, the motion to dismiss (Doc. 13) is due to be GRANTED in part and DENIED in part.

## I. JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 and § 1367. The parties do not contest personal jurisdiction or venue,

and the court finds adequate allegations to support both.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts as alleged in the complaint are as follows:

Southern Field is an industrial maintenance management and services provider operating in 30 states. Doc. 1 at ¶ 8. Killough was an employee of Southern Field until March 25, 2018. Doc. 1 at ¶ 9. TMS is an industrial maintenance company formed by Killough to compete with Southern Field. Doc. 1 at ¶ 10. Killough began his employment with Southern Field in October 2007 and by March 25, 2018 he was the superintendent of Southern Field's contract maintenance crew assigned to supervise and manage Southern Field's maintenance service work for Georgia-Pacific Corporation ("GP"). Doc. 1 at ¶ 12.

On March 26, 2018, Killough and TMS began work as the maintenance service contractor on the GP project, immediately after Killough separated from his employment with Southern Field. Doc. 1 at ¶ 24. Southern Field alleges that Killough made plans and took actions to form TMS while he was an employee of Southern Field, and that these actions were taken clandestinely and without the knowledge and consent of Southern Field. Doc. 1 at ¶ 15. As part of this process, Southern Field alleges, Killough misappropriated confidential, proprietary, and trade secret business information belonging to Southern Field. The trade secret information is alleged to include the following:

a. Southern Field's business plan related to maintenance service project work;

b. Southern Field's project estimates, proposals, subcontracts, and purchase orders and his intimate knowledge about Southern Field's proprietary and confidential information contained in them;

c. Southern Field's project tracking log, containing information on past, current and future purchase orders on the GP Project;

     d.     Southern Field's proprietary and confidential time and materials rates used to prepare bids and quotes for industrial maintenance contracts and jobs, including on the GP Project; and

     e.     Documents and information containing Southern Field's current gross profit, overhead and pretax percentages.

Doc. 1 at ¶ 19.

The complaint further alleges that Killough recruited to TMS the Southern Field crew that he supervised on the GP project, and that he caused GP to replace Southern Field as the maintenance contractor on the GP project outside of the usual bid process. Doc. 1 at ¶ 17. Southern Field also alleges that during his employment Killough received and signed a written acknowledgment within the employee handbook agreeing that sensitive business information is confidential, the property of the company, and should not be discussed except when explicitly authorized by the company. Doc. 1 at ¶ 21. The complaint also alleges that Killough prepared and delivered to GP quotes and proposals for maintenance work that were marked as "confidential and proprietary information." Doc. 1 at ¶ 22. There is no allegation that Killough signed an independent confidentiality, non-compete, or non-solicitation agreement.

Southern Field alleges that much of the information misappropriated was current when Killough took it, could easily be used to Southern Field's great competitive detriment, had great economic value to Southern Field, and was the subject of reasonable efforts by Southern Field to protect its secrecy. Doc. 1 at ¶ 23.

### III. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and

construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

### A. Trade Secrets Claims

Southern Field states claims for violations of the federal Defend Trade Secrets Act ("DTSA") and the Alabama Trade Secrets Act ("ATSA") in Counts I and II of the complaint.

The DTSA creates a private cause of action for an "owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). In order to plead a violation of the DTSA, a plaintiff must allege that it (i) "possessed information of independent economic value" that (a) "was lawfully owned by" the plaintiff, (b) for which the plaintiff "took reasonable measures to keep secret," and (ii) the defendant "used and/or

disclosed that information" despite (iii) "a duty to maintain its secrecy." *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285 (M.D. Fla. 2018). The Act defines trade secrets as

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
> (A) the owner thereof has taken reasonable measures to keep such information secret.

18 U.S.C. § 1839(3). This information must also "derive[ ] independent economic value . . . from not being generally known." 18 U.S.C. § 1839(3). "Pursuant to DTSA, prohibited 'misappropriation' includes both the acquisition of a trade secret and its disclosure." *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1348 (N.D. Ga. 2017).

Under Alabama law, a person who discloses or uses the trade secret of another, without a privilege to do so, is liable to the other for misappropriation of the trade secret if:

> (1) That person discovered the trade secret by improper means;
> (2) That person's disclosure or use constitutes a breach of confidence reposed in that person by the other;
> (3) That person learned the trade secret from a third person, and knew or should have known that (i) the information was a trade secret and (ii) that the trade secret had been appropriated under circumstances which violate the provisions of (1) or (2), above; or
> (4) That person learned the information and knew or should have known that it was a trade secret and that its disclosure was made to that person by mistake.

Ala. Code § 8-27-3.

The Defendants raise the same arguments in support of dismissal of the state and

federal trade secrets claims. Specifically, they claim that Southern Field has failed to describe the alleged trade secret information allegedly taken, how the information was taken, the information's value, and what efforts were taken to safeguard the information.

First the Defendants argue that Southern Field has failed to allege facts which describe the information allegedly misappropriated by Killough. The Defendants acknowledge that Southern Field has set out categories of information that allegedly constituted a trade secret, but argue that the identified categories are not described in terms of what information they contained or how Killough or TMS used them. The Defendants argue that if the information was just general knowledge of the trade by Killough as crew supervisor, using that information was permissible conduct. The Defendants cite, among other cases, *Vendavo, Inc. v Price f(x) AG*, 2018 WL 1456697, at *3 (N.D. Cal. March 23, 2018), in which the court found insufficient allegations of "purported trade secrets in broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets Vendavo has a basis to believe actually were misappropriated here."

In response, Southern Field points to its allegation in the complaint that Killough and TMS misappropriated Southern Field's business plan related to maintenance service project work; project estimates and proposals; the project tracking log containing information on past, current, and future purchase orders on the GP project; proprietary and confidential time and materials rates used to prepare bids and quotes for maintenance contracts including the GP project; and information containing gross profit, overhead, and pretax percentages. Doc. 1 at ¶ 19. Southern Field maintains that alleging a category of

information is sufficient. *See, e.g., Murray Energy Holdings Co. v. Mergermarket USA, Inc*, 2016 WL 3365422, at *4 (S.D. Ohio June 17, 2016) (noting that courts have declined to dismiss trade secret claims where plaintiffs alleged trade secrets that were based on information about operations or processes, pricing methods, or business plans).

One district court explained the rationale for allowing the pleading of categories, stating that a plaintiff may identify purported trade secrets generally to avoid publicly disclosing information in court filings. *Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, No. 17 C 1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017) (finding sufficient an allegation that defendant was exposed to confidential information such as "customer account information, product summaries, pricing sheets, product prototypes, product designs, and detailed sales reports.").

In this case, the allegations of the complaint, while listing information in categories, are not merely categories of information that potentially could be trade secrets, but more specifically describe information that has been misappropriated in as much as Southern Field has identified categories of information specific to maintenance service project work, "current and future purchase orders on the GP Project," and time and materials rates and quotes for contracts "including on the GP project." Doc. 1 at ¶ 19.

"The question of whether an item taken from an employer constitutes a 'trade secret,' is of the type normally resolved by a fact finder after full presentation of evidence from each side." *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288–89 (5th Cir. 1978); *see also Pub. Sys., Inc. v. Towry*, 587 So. 2d 969, 972 (Ala. 1991) ("What constitutes a trade secret is a question of fact for the trial court."). The court concludes, therefore, that

the purported trade secrets have been plausibly identified.

The Defendants also argue that even if there were facts sufficient to support the existence of a trade secret, the size disparity between Southern Field and TMS means that additional factual development would be required before the court could conclude that the information could even be used by Killough and TMS. The complaint, however, alleges specifically that the Defendants used trade secrets in obtaining service work on the GP project. Doc. 1 at ¶ 26. As to method by which the identified trade secrets were taken, the Defendants state that the complaint contains three alternative means of misappropriation—taking the information from the computer system, taking hard copies, and learning through experience. The Defendants argue that the last of these three is not a valid basis for finding a trade secret violation.

Other courts, when applying other trade secret protection statutes, have reasoned that general skills and knowledge learned in the course of employment do not constitute trade secrets. *See, e.g.*, *Saban v. Caremark Rx, LLC*, 780 F. Supp. 2d 700, 734 (N.D. Ill. 2011). That being said, "information otherwise a trade secret . . . does not lose its status as a trade secret because it was memorized rather than physically taken." *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 986–88 (N.D. Ohio 2008). The court concludes, therefore, that the allegation that information was learned through experience is not fatal to Southern Field's claim. However, as will be discussed below, additional factual development could more carefully define the contours of this theory.

The Defendants also argue that Southern Field has not sufficiently alleged that the trade secrets at issue had value because there is no allegation that the information is current

or that Killough would have needed or would have been aided by the information in drafting his own bids for the GP work. The Alabama Supreme Court has explained that trade secrets derive economic value from being generally unknown and not readily ascertainable by the public. *Ex parte Miltope Corp.*, 823 So. 2d 640, 645 (Ala. 2001).

The complaint in this case alleges that "much of the information misappropriated was current when Killough took it [and] could easily be used to Southern Field's great competitive detriment in the hands of a competitor like TMS." Doc. 1 at ¶ 23. Southern Field also alleges that the misappropriated information "could not have been readily obtained or replicated by competitors" and was used to form and capitalize TMS to enable TMS to be ready to compete immediately with Southern Field and to take business opportunities from Southern Field. Doc. 1 at ¶ 23. These allegations fall within the description of value in *Ex parte Miltope*.

The Defendants place great emphasis on the perceived failure of Southern Field to allege reasonable efforts to safeguard the purported trade secret information. The Defendants argue that there are only two relevant allegations regarding reasonable security measures—the claim that Killough received an Employee Handbook that describes protective measures and expectations of employees in handling sensitive matters, and the claim that some quotes and proposals were marked confidential and proprietary.

The Northern District of Georgia, in analyzing Georgia trade secret law, has reasoned that merely having an employee sign generalized confidentiality agreements is "generally not, standing alone, sufficient to demonstrate reasonable efforts." *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1334 (N.D. Ga. 2007). Southern Field

does not stand on the confidentiality statement alone, however, because it also has alleged that Killough prepared and delivered to GP quotes and proposals for maintenance work that were marked as "Confidential & Proprietary Information." Doc. 1 at 8.

Some courts have found confidentiality policies to be reasonable efforts to maintain secrecy when combined with internal information classification and control guidelines. *See Deluxe Fin. Servs., LLC v. Shaw*, 2017 WL 3327570, at *3 (D. Minn. Aug. 3, 2017). With respect to the documents marked "confidential and proprietary" which were provided to GP, the Defendants argue that disclosure of information to a third party without a confidentiality agreement precludes a finding that the document is a trade secret as a matter of law, citing *Pub. Sys., Inc. v. Towry*, 587 So. 2d 969 (Ala. 1991). *Public Systems, Inc.* speaks to a more narrow issue, however. In that case, the court held that information "made public," and not treated as secret, is not a trade secret. *Pub. Sys., Inc.*, 587 So. 2d at 969. In this case, the information was not "made public," but was instead disclosed to a customer with a "confidential and proprietary" label. *Cf. Alagold Corp. v. Freeman*, 20 F. Supp. 2d 1305, 1315 (M.D. Ala. 1998), *aff'd*, 237 F.3d 637 (11th Cir. 2000) (stating that there is no evidence that Alagold's proprietary information was marked "confidential" or that Alagold communicated to its employees that such proprietary information was to be kept confidential). Measures taken to protect secrecy when information is disclosed to a customer present different facts than a situation where information is made public. "Trade secret protection is not destroyed by the 'usual situation' in which secret information is shared with employees or other confidants who are legally obligated, by express or implicit agreement or by another duty imposed by law, to maintain its secrecy." *Diamond Power*

*Int'l, Inc.*, 540 F. Supp. 2d at 1333.

In one case cited by the Defendants, *Bay Fasteners and Components*, 2018 WL 1394033, at *4 (N.D. Ill. March 20, 2018), the court reasoned that the plaintiff did not plead reasonable measures to protect trade secrets in alleging that it disclosed financial records and confidential information but did not specify "any measures" to protect the confidentiality of the information. Southern Field responds by pointing to *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 974 (8th Cir. 2011). In that case, the court explained that the "use of proprietary legends on documents *or* the existence of confidentiality agreements are frequently-considered factors in establishing or denying a trade secret claim." *Id.* (emphasis added). The court examined whether the documents marked with proprietary-rights legends were distributed widely, including to parties not bound by confidentiality agreements, in holding that there were reasonable efforts to maintain secrecy. *Id.*

Some states evaluate multiple factors in determining reasonableness, the presence or absence of a confidential disclosure agreement being just one factor, along with the nature and extent or precautions taken, the circumstances under which the information was disclosed, and the degree to which the information has been placed in the public domain or rendered readily ascertainable. *See TouchPoint Sols., Inc. v. Eastman Kodak Co.*, 345 F. Supp. 2d 23, 29 (D. Mass. 2004); *see also Diamond Power Int'l*, 540 F. Supp. 2d at 1336 (finding a lack of measures to ensure confidentiality because the materials "contained no confidentiality markings," and there were no "specific instructions concerning confidentiality" or any requirement that the materials be returned).

The allegations in this case include protective measures in the employee handbook, but go beyond this fact to include documents marked as confidential and proprietary. Information is alleged to have been provided to a customer with that confidentiality marking. Cases standing for the proposition that employee handbook statements alone are not sufficient, or that information disclosed to the public is not adequately safeguarded are distinguishable. "Reasonable efforts to maintain secrecy need not be overly extravagant, and absolute secrecy is not required." *AvidAir Helicopter Supply, Inc.*, 663 F.3d at 974. The court concludes that sufficient allegations of security measures have been made.

Upon review of the allegations made in support of the trade secrets claims, the court has determined that there are allegations which satisfy each of the elements of the claims challenged by the Defendants. What is not clear, however, is whether the allegations for each element apply consistently to the same categories of trade secrets. For example, Southern Field has pleaded that the project-tracking log that contained information on past, current, and future purchase orders on the GP project was misappropriated. While that category is specific enough to constitute an allegation of a trade secret, the complaint is not clear whether the project tracking log was part of the information marked confidential and proprietary. It is also unclear from the complaint whether information alleged to be a trade secret misappropriated by Killough that Killough learned, but did not physically remove, was information outside of that which would be generally known in the industry and which was subject to reasonable measures of secrecy. The court will, therefore, give Southern Field an opportunity to file an amended complaint to plead additional facts satisfying all of the elements of a misappropriated trade secret under federal and state law as to each

category of trade secret.

**B.      Remaining State-Law Claims**

In addition to the cause of action for violation of the Alabama Trade Secrets Act, Southern Field brings state-law claims for breach of fiduciary duty and duty of loyalty, conspiracy, conversion, and tortious interference with contractual and business relations against Killough and TMS.

### *1.      Conversion*

The Defendants argue that Southern Field's conversion claim is preempted by the Alabama Trade Secrets Act claim and, even if not preempted, is due to be dismissed because the complaint fails to state a conversion claim.

In support of the preemption argument, the Defendants rely on district court cases which found preemption under Alabama law where conversion and a violation of the trade secrets act arose from the same facts. *See, e.g., Madison Oslin, Inc. v. Interstate Res., Inc.*, 2012 WL 4730877 (N.D. Ala. Sept. 30, 2012). In that case, the court reasoned that the ATSA "is intended both to codify *and to modify* the common law of trade secrets in Alabama," including the preemption of inconsistent common law trade secret claims. *Id.* at *9.

The *Madison Oslin* court relied on an analysis of Georgia law in *Penalty Kick Management Limited v. Coca Cola Company*, 318 F.3d 1284, 1297 (11th Cir. 2003). In that case, the Eleventh Circuit determined that the conversion claim was preempted because the claims in that case were based on a trade secret and were not information "outside the scope of a trade secret." *Id.* The plaintiff had argued that state-law claims for

the wrongful use of information that does not rise to the level of a trade secret should not be preempted. *Id.* The court acknowledged that this argument might be valid under certain circumstances, but rejected it because the misused information in that case did rise to the level of a trade secret. *Id.*

Southern Field argues that its claim is not preempted because it is not necessarily a trade secret appropriation claim, citing *Acoustic Artistry, LLC v. Peavey Electronics Corporation*, 2013 WL 12250381, at *8 (N.D. Ala. 2013), in which the court concluded that the Alabama Trade Secrets Act does not replace the common-law tort remedy of conversion.

In *Allied Supply Co., Inc. v. Brown*, 585 So. 2d 33, 37 (1991), the Alabama Supreme Court held that the legislature intended for the ATSA to replace common-law tort remedies for the misappropriation of trade secrets while leaving existing contract remedies or safeguards intact.

As Southern Field points out, the Alabama Supreme Court reversed a grant of summary judgment in one case, stating that the trier of fact should determine whether discarded documents retrieved from the common trash dumpster located on leased premises constituted conversion, and also found that jury questions existed on the issues of whether the discarded documents were trade secrets. *See Soap Co. v. Ecolab, Inc.*, 646 So. 2d 1366, 1371 (Ala. 1994), *overruled on other grounds by White Sands Group, L.L.C. v. PRS II, LLC*, 32 So. 3d 5 (Ala. 2009). The documents at issue were "proposals to specific customers, customer complaints, and price lists." *Id.*

The complaint in this case alleges conversion, and incorporates by reference all of

the preceding paragraphs of the complaint, including allegations that the confidential and proprietary information taken is a trade secret. The complaint, therefore, alleges conversion of what has been alleged to be trade secrets. That claim is preempted and the Motion to Dismiss is due to be GRANTED as to this aspect of the claim. *See Allied Supply Co., Inc. v. Brown*, 585 So. 2d at 37. The complaint also alleges that tangible property was converted. The complaint identifies "hard copy documents." Doc. 1 at ¶ 19. In light of the *Soap Co.* decision, this court concludes that this aspect of the conversion claim is not preempted under Alabama law and the Motion to Dismiss is due to be DENIED as to this aspect of the claim.

Although the parties have raised arguments in their briefs about whether preemption should apply to conversion of property even if the property does not rise to the level of a trade secret, that claim is not pleaded in the complaint. The complaint pleads conversion of property alleged to be a trade secret. On these pleadings, the court need not decide whether a conversion claim can be pleaded in the alternative. *See Penalty Kick Mgmt. Ltd.*, 318 F.3d at 1297.

The Defendants also state that the complaint does not allege that an actual document left the Southern Field premises and does not specify whether information was taken after Killough's employment ended. However, Southern Field has alleged that Killough took hard copy documents from it. Doc. 1 at ¶ 19. In the conversion count, Southern Field alleges that tangible person property was taken from Southern Field. Doc. 1 at ¶ 58. Documents identified in the complaint are a business plan, project estimates, proposals, subcontracts, purchase orders, a project tracking log, time and materials rates, and

documents containing Southern Field's gross profit, overhead, and pretax percentages. Doc. 1 at ¶ 19. These types of documents can be the basis for a conversion claim under Alabama law. *See Soap Co.*, 646 So. 2d at 1369 (addressing conversion by taking documents out of the trash including proposals to specific customers, customer complaints, and price lists). This court concludes, therefore, that this aspect of the conversion claim is not due to be dismissed.

### 3. *Breach of the Duty of Loyalty and Conspiracy*

In the complaint, Southern Field alleges that Killough owed a duty to disclose any conflict between his own interests and the interests of Southern Field, to disclose information held by him that could damage Southern Field, not to set up a competing enterprise, not to compete with Southern Field while still employed, and not to use information gained in confidence to profit at the expense of Southern Field. Doc. 1 at ¶ 54.

The Defendants move for dismissal of the breach of duty and loyalty claim, stating that one aspect of it—a duty not to use information gained in confidence—is preempted by the ATSA, and move for dismissal as to the other allegations in support of the claim on the basis that an employee does not breach a duty of loyalty by leaving to work for a competitor. The Defendants argue that making plans to leave and to compete with one's employer do not rise to the level of a breach of fiduciary duty. The Defendants contend that there is no claim for merely setting up a competing enterprise while working for one's employer. The Defendants reason that an allegation that Killough became a contract employee of Southern Field's former customer does not mean that there is a breach of fiduciary duty. In response, Southern Field contends that no aspect of the claim is

preempted but, even if one aspect might be preempted, the claim is not wholly preempted because the claim focuses primarily on Killough's actions in setting up the competing business.

In *Allied Supply Company*, 585 So. 2d at 37, the Alabama Supreme Court explained that the legislature intended to replace common-law tort remedies for the misappropriation of trade secrets, so a claim that the defendants misappropriated trade secrets is barred, but a claim that the defendants breached a fiduciary duty by soliciting employees, vendors, and customers was allowed to proceed. Consistent with the Alabama Supreme Court, this court concludes that the fiduciary duty claim is preempted to the extent that it is a theory that Killough breached a duty by misappropriating trade secrets, but other aspects of the claim should be allowed to proceed.

Under Alabama law, an at-will employee does not owe a fiduciary duty to refrain from resigning and entering a competing business. *See Allied Supply Co.*, 585 2o. 2d at 35. Actions taken beyond that, however, can constitute a breach of fiduciary duty. *Id.* "Implicit in this duty is an obligation not to subvert the principal's business by luring away customers or employees of the principal, or to otherwise act in any manner adverse to the principal's interest." *Id.*; *see also Alagold Corp. v. Freeman*, 20 F. Supp. 2d 1305, 1311 (M.D. Ala. 1998) (finding question of fact as to breach of fiduciary duty where employee was secretly under contract to work for competitor and continued working for former employer). The allegations of the complaint include allegations that Killough set up a competing enterprise and usurped Southern Field's business opportunities while still employed with Southern Field. Doc. 1 at 16. The court concludes, therefore, that sufficient allegations have been

made as to this claim.

Finally, the Defendants argue that if the breach-of-fiduciary duty claim is not due to be dismissed, then the related conspiracy claim is due to be dismissed because there can be no conspiracy between a principal and an agent. The Defendants rely on the intra-corporate conspiracy doctrine. Southern Field argues in response that Killough and TMS are separate legal entities, so the intra-corporate conspiracy doctrine cannot apply.

Under the intra-corporate conspiracy doctrine, "there is no 'conspiracy' where the only parties to the alleged conspiracy are the corporation and one of its agents and the corporation's liability is predicated upon the theory of respondeat superior through the acts of the agent with whom it allegedly conspired." *Williams v. Marcum*, 519 So. 2d 473, 475 (Ala. 1987). The doctrine also applies to entities other than corporations. *See id.* (applying doctrine to city and its agent); *see also Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010) (stating that the doctrine applies to public entities such as cities, counties, and public universities and their agents); *United States v. IASIS Healthcare LLC*, No. CV-15-00872-PHX-JJT, 2016 WL 6610675, at *16 (D. Ariz. Nov. 9, 2016) (applying rule to alleged conspiracy between an LLC parent company and its subsidiary entities).

Applying an earlier version of the Alabama Limited Liability Statute, the Alabama Court Civil Appeals explained that a "member of a limited-liability company is an agent of the limited liability company for the purpose of its business or affairs.'" *Smelser v. L & H Truck Servs., LLC*, 166 So. 3d 693, 695–96 (Ala. Civ. App. 2014) (quotation omitted). Therefore, even though TMS is a separate legal entity, the conspiracy claim falls within the intra-corporate conspiracy doctrine if Killough is its agent.

18

The court will, therefore, dismiss the conspiracy claim, but will do so without prejudice. If Southern Field can plead facts which would take this claim outside of the scope of the intra-corporate conspiracy doctrine, Southern Field may attempt to do so.

### 2. *Tortious Interference with Business Relations*

In Count Five, Southern Field brings a clam for tortious interference with contractual or business relations. That claim requires a showing of (1) the existence of a protectable business relationship, (2) of which the defendant knew, (3) to which the defendant was a stranger, and (4) with which the defendant intentionally interfered, and (5) damages. *White Sands Group, L.L.C.*, 32 So. 3d at 14. The Defendants move for dismissal on several grounds, one of which is that Killough was not a stranger to the business relationship and so cannot be held liable for tortious interference with it. *See Allied Co. of Wiregrass v. City of Dothan*, 191 So. 3d 804 (Ala. Civ. App. 2015).

Southern Field's position is that a plaintiff may bring a claim against an employee where the officer or employee acted outside of her scope of employment and acted with actual malice. Doc. 16 at 19 (quoting *Hand v. Univ. of Ala. Bd. of Trustees*, 304 F. Supp. 1173, 1184 (N.D. Ala. 2018)). Southern Field notes allegations in the complaint that Killough acted outside of the scope of his employment. Doc. 16 at 20. Southern Field does not, however, point to any allegation of actual malice in the complaint. Doc. 16 at 20.

In this posture, the court will allow Southern Field an opportunity to replead this claim. The court does not find this amendment to be futile in the face of the Defendants' invocation of competitor's privilege because that is an affirmative defense, and additional facts may have some bearing on that defense as well. *White Sands Group, L.L.C.*, 32 So.

3d at 20 (holding that evidence of concealment of facts relating to the defendant's competition precluded judgment as a matter of law on the affirmative defense).

## V. CONCLUSION

For the foregoing reasons, it is ORDERED that the motion to dismiss (Doc. 13) is GRANTED in part and DENIED in part as follows:

1. The DTSA and ATSA claims in Counts I and II are DISMISSED without prejudice, but may be more specifically repleaded consistent with the discussion of the claims in this Order.

2. Count III is DISMISSED with prejudice as to the claim for breach of fiduciary duty and duty of loyalty based on misappropriation of a trade secret and is DISMISSED without prejudice as to the conspiracy claim. The conspiracy claim may be repleaded consistently with the discussion of the claim in this Order.

3. Count IV is DISMISSED with prejudice to the extent that it is based on the conversion of intangible trade secrets.

4. Count V is DISMISSED without prejudice and may be repleaded consistently with the discussion of this claim in this Order.

It is further ORDERED that the Plaintiff shall file no later than **October 15, 2018** an amended complaint, complete unto itself, consistent with this Memorandum Opinion and Order. This Amended Complaint should continue to include any claims presently in the original complaint which have not been dismissed by this Order, and should also include, if the Plaintiff seeks to pursue the claims, any claims dismissed without prejudice and the following allegations:

1.     The elements of a federal and state trade secret claim as to each category of trade secret information identified in the complaint.

2.     The factual basis for avoidance of the intra-corporate conspiracy doctrine as applied to Southern Field's alleged conspiracy, should the Plaintiff choose to pursue that claim.

3.     A factual basis for an allegation of malice in support of a tortious interference with contractual and business relations claim.

DONE this 1st day of October, 2018.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE