IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SOUTHERN FIELD MAINTENANCE )
& FABRICATION LLC, )
)
    Plaintiff, )
)
v. ) CASE NO. 2:18-cv-581-GMB
) [wo]
WALTER ERIC KILLOUGH, and )
TOTAL MAINTENANCE SERVICES, )
)
    Defendants. )

## **MEMORANDUM OPINION AND ORDER**

Pending before the court is the Motion to Dismiss First Amended Complaint filed by Defendants Walter Eric Killough and Total Maintenance Services ("TMS"). Doc. 23. Plaintiff Southern Field Maintenance & Fabrication, LLC ("Southern Field") filed this lawsuit on June 15, 2018, bringing several state and federal claims arising out of actions by its former employee, Killough, and his new business, TMS. Doc. 1. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. Docs. 19 & 20. This court previously granted in part and denied in part a motion to dismiss the complaint. Doc. 21 at 20. The instant motion is directed to the amended complaint filed by Southern Field with leave of court. Doc. 22. After careful consideration of the parties' submissions and the applicable law, for reasons to be discussed below, the motion to dismiss (Doc. 23) is due to be DENIED.

# I. JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 and § 1367. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

# II. FACTUAL AND PROCEDURAL BACKGROUND

The facts as alleged in the amended complaint are as follows:

Southern Field is an industrial maintenance management and services provider operating in 30 states. Doc. 22 at ¶ 8. Killough was an employee of Southern Field until March 25, 2018. Doc. 22 at ¶9. TMS is an industrial maintenance company formed by Killough to compete with Southern Field. Doc. 22 at ¶ 10.

Killough began his employment with Southern Field as a fabrication shop foreman and was promoted over time to the position of superintendent of Southern Field's contract maintenance crew assigned to supervise and manage Southern Field's maintenance service work for Georgia-Pacific Corporation ("GP"). Doc. 22 at ¶ 12.

Despite his position with Southern Field, Killough began making plans to form an industrial maintenance company to compete with Southern Field. All of Killough's plans were undertaken clandestinely and without the knowledge or consent of Southern Field. Doc. 22 at ¶ 15.

As part of this process, Southern Field alleges, Killough misappropriated confidential, proprietary, and trade secret business information belonging to Southern Field. The trade secret information is alleged to include the following, with the following protections of those trade secrets, as paraphrased:

a. Southern Field's business plan related to maintenance service project work which is maintained in hard copy and electronic copy formats and is marked with legends indicating it is confidential and/or proprietary. The electronic copy is maintained on a password-protected server and the hard copies are maintained in locked storage. Killough was in the limited group of Southern Field employees who had password access to the server and Southern Field made presentations to and specifically discussed with Killough the need to maintain the confidentiality of the business plan.

b. Southern Field's project estimates, proposals, subcontracts, and purchase orders and Killough's intimate knowledge about Southern Field's proprietary and confidential information contained in them. Killough had many conversations of a confidential nature about how the price was prepared for the proposals. Access to the bid documents is controlled by a pre-approved list of employees with access. The bid documents are stored on a password-protected server or in locked cabinets or locked rooms. Southern Field made presentations to and discussed with Killough the need to maintain confidentiality. The internal documents were marked with legends indicating that they were confidential and/or proprietary.

c. Southern Field's project tracking log, containing information on past, current and future purchase orders on the GP Project. Only authorized personnel are given access to this log. Killough was in a limited group of employees who had password access to the access-limited, password-protected server. Southern Field made presentations and discussed with Killough the need to maintain the confidentiality of the information in the log.

d. Southern Field's proprietary and confidential time and materials rates used to prepare bids and quotes for industrial maintenance contracts and jobs, including on the GP Project. The sheets are maintained in hard copy and electronic copy formats. The electronic copies are maintained on an access-limited, password-protected server. The sheets are marked with a confidentiality/proprietary legend. Southern Field made presentations to and discussed with Killough the need to maintain confidentiality of the proprietary information in the rate sheets.

e. Documents and information containing Southern Field's current gross profit, overhead and pretax percentages. These documents were only shared with authorized personnel, including Killough, to analyze

> profitability and to help prepare future bids. The information was maintained by the Chief Financial Officer on an access-limited, password-protected server. Southern Field made presentations to and discussed with Killough the need to maintain confidentiality.

Doc. 22 at ¶ 19.

Southern Field also alleges that during his employment Killough received and signed a written acknowledgment within the company handbook that sensitive business information is confidential, the property of the company, and should not be discussed except where explicitly authorized by the company. Doc. 22 at ¶ 21. The amended complaint also alleges that Killough prepared and delivered to GP quotes and proposals for maintenance work that were marked as "CONFIDENTIAL & PROPRIETARY INFORMATION." Doc. 22 at ¶ 22. There is no allegation that Killough signed an independent confidentiality, non-compete, or non-solicitation agreement.

Southern Field alleges that much of the information Killough misappropriated was current when he took it, could easily be used to Southern Field's great competitive detriment, had great economic value to Southern Field, and was the subject of reasonable efforts by Southern Field to protect its secrecy. Doc. 22 at ¶ 23.

Southern Field alleges that Killough clandestinely took actions to recruit the Southern Field crew, to have the GP contract replaced outside of the usual bid process, and to have Southern Field removed from the bid list or not notified about upcoming bid opportunities. Doc. 22 at ¶ 17.

Because of Killough's actions, it is alleged that Killough and TMS became the maintenance service contractor on the GP project immediately after Killough separated

from his employment with Southern Field on March 25, 2018. Doc. 22 at ¶ 24.

## III. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

Killough and TMS seek the dismissal of portions of Counts I, II, IV, and V of the amended complaint.

### A. Trade Secrets Claims

Southern Field brings claims for violations of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"), and the Alabama Trade Secrets Act, Alabama Code § 8-27-3 ("ATSA"), in Counts I and II of the amended complaint.

5

In ruling on the initial motion to dismiss, this court determined that there are allegations which satisfy each of the elements of the claims challenged by Killough and TMS, but explained that it was not clear whether the allegations for each element of the trade secrets claims applied consistently to the same category of trade secret. Doc. 21 at 12. The court gave Southern Field additional time in which to file an amended complaint to address this concern.

The categories of trade secrets alleged in the amended complaint are Southern Field's business plan; bid documents; the project tracking log; time and materials rates; and current gross profit, overhead, and pretax percentages. Doc. 22. In the new motion, Killough and TMS now challenge only the element of reasonable measures to protect trade secrets as to each of the categories of trade secrets alleged, other than the bid documents. Doc. 23 at 1.

As to Southern Field's business plan and the time and materials rates, Killough and TMS argue that Southern Field in its amended complaint has pleaded "utterly unadorned" allegations that these categories of documents were marked with indicia that they were confidential and that these representations lack plausibility. Killough and TMS argue that some allegations of the amended complaint are pleaded using the present tense, and so do not even plead that indicia of confidentiality existed at the time of Killough's employment. Killough and TMS also challenge new allegations in the amended complaint that Southern Field discussed with Killough the need for confidentiality, stating that these allegations were missing from the first complaint without explanation and are just bald recitations of the elements of the claims.

The business plan is alleged to have been maintained in hard and electronic copy, to have been marked with legends indicating it is confidential and/or proprietary, to have been maintained either on a password-protected server to which a limited group of employees had access or in locked file storage, and Southern Field officials are alleged to have discussed with Killough the need to maintain the confidentiality of proprietary information in the business plan. Doc. 22 at ¶ 19 (a). The time and materials rates also are alleged to have been in hard copy and electronic formats, with electronic copies being maintained on an access-limited, password-protected server; marked with a confidentiality/proprietary legend; and Southern Field is alleged to have discussed with Killough the need to maintain confidentiality. Doc. 22 at ¶ 19(d).

The Federal Circuit, applying Florida law, has examined allegations of actions taken to maintain secrecy that included "imposing confidentiality and nondisclosure obligations on [] employees that have access to . . . Trade Secrets, marking documents constituting [] Trade Secrets with confidentiality designations and/or other indicia prohibiting the reproduction or dissemination of such documents or information to third parties, [and] restricting physical and electronic access by third parties" to trade secret information. *ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 986 (Fed. Cir. 2014). The Federal Circuit explained that these facts were enough to state a claim that is plausible on its face and that requiring more was "too demanding of specificity." *Id.* This court is persuaded to follow this analysis.

Southern Field has not merely alleged the elements of a claim that it took "reasonable measures" of secrecy, but instead has alleged specific measures it took,

7

including marking the confidential nature of the document, keeping it in a password-protected and/or locked area, and discussing the need with Killough to maintain confidentiality. Doc. 22 at ¶ 19. The fact that some of these allegations are pleaded in the present tense does not undermine their plausibility at this stage of the litigation. For purposes of the pending motion to dismiss, the court concludes that these allegations are sufficient to state a plausible DTSA and ATSA claim with respect to the business plan and time and materials rates.

In its previous Order, this court concluded that there were sufficient allegations of reasonable measures to protect secrecy even in the absence of a confidentiality agreement because the complaint alleged that the trade secrets were contained in documents with proprietary markings. Doc. 21. The amended complaint, however, makes clear that some categories of trade secrets were not marked as confidential and proprietary—specifically, the project tracking log and the current gross profit, overhead, and pretax percentages documents. Doc. 22 at ¶ 19 at (c) & (d).

The amended complaint alleges that these two categories of trade secrets were contained on a password-protected, limited-access server, and that Southern Field discussed with Killough the need to maintain the confidentiality of the proprietary information in those particular documents. Doc. 22 at ¶ 19(c)–(d). The amended complaint states that only authorized personnel were given access to the project tracking log and the profit and overhead documents. Doc. 22 at ¶ 19(c)–(d). Killough and TMS argue that while Southern Field now alleges that these documents were housed on password-protected

servers, there is no indication that the same protection was not given to all of Southern Field's documents, undercutting any reliance on this security measure.

Other jurisdictions have examined the contours of the law regarding reasonable measures taken to protect secrecy. "[A]n employer's failure to mark documents as confidential or trade secret 'precludes in many cases trade secret protection for those materials.'" *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 959 (C.D. Cal. 2011). The specific circumstances of a case, however, may militate against a ruling as a matter of law that a party's failure to mark documents as confidential precludes a finding of reasonable efforts. *Id.* The marking of documents as confidential and proprietary is significant particularly when the documents are disclosed to a third-party for some purpose. *See M.C. Dean, Inc. v. City of Miami Beach, Fla.*, 199 F. Supp. 3d 1349, 1355 (S.D. Fla. 2016). The analysis of the measures taken to protect secrecy is fact-specific, however, and "under all the circumstances, [if] the employee knows or has reason to know that the owner intends or expects the information to be secret, confidentiality measures are sufficient." *Lasermaster Corp. v. Sentinel Imaging*, 931 F. Supp. 628, 635 (D. Minn. 1996).

In this case, Southern Field has alleged that these categories of trade secrets were in an access-limited, password-protected server and that there was a limited group of employees with that access to the server, including Killough. Doc. 22 at ¶ 19(c)–(d). Significantly, Southern Field also has alleged that Killough was informed of the need to maintain the confidentiality of the information contained within the specific documents at issue. At this point in the case, it is unclear what documents were misused and how they were misused—facts that may or may not undermine the secrecy measures taken. Doc. 22

9

at ¶ 22. As pleaded, there are sufficient allegations of reasonable security measures such that Southern Field plausibly has alleged that Killough knew or had reason to know that it intended or expected the information to be confidential. *See, e.g., Lasermaster Corp.*, 931 F. Supp. at 635. Southern Field's proof ultimately may be insufficient to maintain its claims as to all of the trade secrets categories, and the court will revisit this analysis upon presentation of evidence if called upon to do so later in the case. The motion to dismiss, however, is due to be DENIED as to the trade secrets claims.

**B.      Conversion**

This court previously applied a decision of the Alabama Supreme Court in which it reversed a grant of summary judgment because the trier of fact should decide whether discarded documents retrieved from the common trash dumpster located on leased premises were proof of conversion, and also found that jury questions existed on the issues of whether the discarded documents were trade secrets. Doc. 21 at 14 (citing *Soap Co. v. Ecolab, Inc.*, 646 So. 2d 1366, 1371 (Ala. 1994), *overruled on other grounds by White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5 (Ala. 2009)). In so doing, this court concluded that the conversion claim alleged in this case to be based on the conversion of tangible property in the form of "hard copy documents" was not preempted by the ATSA. Doc. 21 at 15.

The amended complaint now alleges that these documents were stored in hard copy format. In response, Killough and TMS argue that this bare allegation, absent any facts explaining the manner in which they were taken, is merely a recitation of the elements of the claim and insufficient to state a plausible claim. Southern Field maintains that only the

intangible trade secret portion of the conversion claim in the original complaint was dismissed by the court so that the motion seeking dismissal of a claim based on conversion of hard copy documents is procedurally impermissible. The court agrees and finds that the motion to dismiss is due to be DENIED as to this aspect of the conversion claim.

A new issue has been raised, however, as to the conversion of computer files. The amended complaint states that Killough and TMS misappropriated information belonging to Southern Field in part by "taking it from Southern Field's computer system" (Doc. 22 at ¶ 19) and that Killough "copied and misappropriated" the profit and overhead and documents and project tracking log. Doc. at ¶ 19(c)(vii) & (e)(vii). Southern Field takes the position in brief that these allegations are broad enough to include an allegation that the project tracking log and profit and overhead documents were taken in hard copy. Doc. 25 at 13. Southern Field further argues, however, that even if these documents were only converted as computer files, they still are actionable in a conversion claim.

The issue of the conversion of computer files was not addressed by the court in its previous Order because it was not clear at that time that Southern Field was alleging a claim relating to the conversion of electronic files. Courts examining the preemptive scope of the ATSA have concluded that a conversion claim for a "novel idea, trade secrets and/or other confidential information" is preempted. *Madison Oslin, Inc. v. Interstate Res., Inc.*, 2012 WL 4730877, at *9 (N.D. Ala. Sept. 30, 2012). If the item alleged to have been converted is a physical item, however, courts have found it to be outside of the preemptive scope of the ATSA. *See Soap Co.*, 646 So. 2d at 1371. Electronic files copied to a disk or removable-media device generally qualify as physical items in this analysis. *See, e.g., Bell*

11

*Aerospace Serv., Inc. v. U.S. Aero Serv., Inc.*, 690 F. Supp. 2d 1267, 1278 (M.D. Ala 2010). But the distinction drawn by some courts is whether the converted property has value independent of the value it accrues as a trade secret. *See, e.g., Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1345 (N.D. Ga. 2007) (distinguishing a claim seeking to remedy an injury caused not by the information but by the taking of physical property such as blueprints and drawings). However, in *Bell Aerospace Service*, 690 F. Supp. 2d at 1278, the court allowed a claim to proceed to trial where files were retained on a personal computer without discussing the issue of preemption in connection with that claim. *See Acoustic Artistry, LLC v. Peavey Elec. Corp.*, 2013 WL 12250381, at *8 n.9 (N.D. Ala. Jan. 10, 2013) (distinguishing *Bell Aerospace Service* and noting that in that case the court did not hold that the Act subsumed unjust enrichment and conversion claims).

At this point in the proceedings, the amended complaint adequately alleges a claim for conversion of physical property, and whether that property has value independent of the ideas or confidential information contained within the physical property is not an issue presently before the court. The motion to dismiss is, therefore, due to be DENIED as to the conversion claim in the amended complaint.

C.  **Tortious Interference with Business Relations**

In Count V, Southern Field brings a claim for tortious interference with contractual or business relations. Killough and TMS originally moved for the dismissal of this claim in the amended complaint on the ground that Killough was not a stranger to the business relationship and so cannot be held liable for tortious interference with it. In addressing the prior motion, the court gave Southern Field additional time in which to replead this claim

to state facts establishing actual malice. Doc. 21. The court also found that the amendment was not futile in the face of the defendants' invocation of competitor's privilege because it is an affirmative defense, and allowed that additional facts alleged in an amended complaint might have some bearing on that defense. Doc. 21 at 19 (citing *White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 20 (Ala. 2009), for the holding that evidence of concealment of facts that the defendant was competing precluded judgment as a matter of law on this affirmative defense).

Killough and TMS again move for dismissal, arguing that Southern Field has not pleaded facts showing actual malice and that the existence of competitor's privilege is so clear that the claim is due to be dismissed. Killough and TMS take the position that malice under Alabama law exists only in narrow factual circumstances and that actions taken merely to compete with Southern Field cannot demonstrate malice.

Southern Field responds that it pleaded facts that plausibly support an inference of malice, including Killough's awareness of the importance of the GP project to Southern Field, his responsibility to communicate upcoming bid opportunities, and his awareness of Southern Field's desire to continue on the GP project. The amended complaint alleges that Killough clandestinely took actions to recruit the Southern Field crew, to have the GP contract replaced outside of the usual bid process, and either to have Southern Field removed from the bid list or to prevent Southern Field from receiving notice of upcoming bid opportunities. Doc. 22 at ¶ 17. Southern Field argues that Killough did not just prepare to leave and compete but that he took affirmative steps or committed omissions so that he could get the GP contract for TMS without having to compete with Southern Field after he

13

left employment. For purposes of the defense of competitor's privilege, Southern Field argues that these are allegations similar to fraud, which are not within the privilege.

Alabama law permits a plaintiff to maintain a claim of interference with business relations against an individual officer or employee with regard to "business or contractual relations to which their corporation or employer is a party." *Perlman v. Shurett*, 567 So. 2d 1296, 1297 (Ala. 1990). An intentional interference claim is viable only where the officer or employee "act[ed] outside their scope of employment and [acted] with actual malice." *Id.* A plaintiff may show the employee's conduct sufficiently deviated from the scope of his authority by demonstrating that the employee played a direct role in interfering with the plaintiff's business relation in order to obtain a personal benefit. *See Pegram v. Hebding*, 667 So. 2d 696, 701–02 (Ala. 1995).

The requirements for proving "actual malice" under Alabama law are less clear. Southern Field points to this language from the Alabama Supreme Court regarding an inference of malice: "Malice may be shown by the proof of facts from which a reasonable inference of malice may be drawn. The line between a proper inference and unwarranted conjecture is not easily drawn. The answer depends on the evidence in each case and on what the trier of fact may reasonably infer from that evidence." *Perlman v. Shurett*, 567 So. 2d 1296, 1298 (Ala. 1990) (citation omitted). In *Hickman v. Winston County Hospital Board*, 508 So. 2d 237, 239 (Ala. 1987), the Alabama Supreme Court relied on a case equating malice and "malevolence," and cited favorably the following description of malice: "a corporation's breach of contract must be done 'without justification or maliciously.'" In addition, to prove malice a plaintiff must make "a strong showing of a

14

pattern of interference." *Morrow v. Auburn Univ. at Montgomery*, 973 F. Supp. 1392, 1410 (M.D. Ala. 1997).

Other jurisdictions have defined "malice" as actual evil-mindedness or specific intent to injure. *See Utility Trailer Sales of Kansas City, Inc. v. MAC Trailer Mfg., Inc.*, 734 F. Supp. 2d 1210 (D. Kan. 2010), *aff'd*, 443 F. App'x 337 (10th Cir. 2011). This definition of malice is consistent with the definition adopted by the Alabama Supreme Court in other contexts.[1] *See Liberty Nat. Life Ins. v. Sanders*, 792 So. 2d 1069, 1078 (Ala. 2000) (quoting jury instructions that "[m]alice means the intentional doing of a wrongful act without just cause or excuse either with the intent to injure the person or property of another person or under such circumstances as the law will imply an evil intent").

Killough and TMS seek to have this court dismiss the tortious interference claim on the ground that actions taken by Killough to have TMS replace Southern Field on the GP contract, which included not informing Southern Field about a bid opportunity or removing Southern Field from the bid list, cannot be considered malice as a matter of law. While the evidence of malice alleged here is not the type of malice recognized in some Alabama cases, *see, e.g., Michelin Tire Corp. v. Goff*, 864 So. 2d 1068, 1077–79 (Ala. Civ. App. 2002), the court is not aware of any Alabama case holding that only actions taken to force the firing of another employee are actionable under Alabama law.

In *Utility Trailer Sales*, 734 F. Supp. 2d at 1218, the court found that it was a "close

---

[1] The competitor's privilege standard in that jurisdiction, however, does not appear to be the same as that in Alabama because in that jurisdiction the conduct must be "independently actionable conduct," which is a higher burden than evil-mindedness or intent to injure. *Utility Trailer Sales*, 734 F. Supp. 2d at 1222.

call," but there was sufficient evidence of malice in the form of evidence of intent to injure the plaintiff's business where the defendant, who was a party to a business relationship with the plaintiff, allowed a third party to sell its products and helped the third party's business to become established with the intent to harm the business of the plaintiff. The defendant also made a representation that took work away plaintiff and gave that work to the third party. *Id.* at 1218–19. In this case, the allegations are not only that Killough set up TMS to compete with Southern Field, but also that he intentionally manipulated the bid process so that he could take advantage of that opportunity for TMS to the detriment of Southern Field. Doc. 22 at ¶ 17. These allegations are consistent with the evidence of malice in *Utility Trailer Sales*, which this court finds persuasive. The allegations also include multiple efforts to position TMS to take GP's business, not merely a one-time event, so as to state a pattern. *See Morrow*, 973 F. Supp. at 1410. The court cannot conclude as a matter of law, therefore, that Southern Field fails to allege facts plausibly establishing malice.

With respect to the defense of competitor's privilege, the Alabama Supreme Court has held that "[t]here is no privilege for self-enrichment by devious and improper means." *White Sands Grp.*, 32 So. 3d at 18–19. In *White Sands*, the court held that a claim for tortious interference could proceed, over the defense of competitor's privilege, because there was evidence indicating that the defendant concealed the fact that it was a competitor of the plaintiff. *Id.* at 20.

In the amended complaint in this case, Southern Field alleges that Killough took actions in secret to compete with Southern Field and had Southern Field removed from the

16

bid list or failed to notify it about upcoming bid opportunities on the GP project in a clandestine manner. Doc. 22 at ¶ 16 & ¶ 17. At this stage of the litigation, these are sufficient allegations of devious or improper means such that the motion to dismiss is not due to be granted on the basis of competitor's privilege.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED that the Motion to Dismiss is hereby DENIED.

The defendants have until **February 12, 2019** to file an answer to the amended complaint.

DONE this 29th day of January, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE